RUTH M. PRASHKER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5379–71. Filed October 25, 1972.

*Samuel M. Monatt,* for the petitioner.
*Howard W. Gordon,* for the respondent.

OPINION

DAWSON, *Judge:* Respondent determined the following deficiencies in petitioner's Federal income taxes:

| Taxable year | Deficiency |
| --- | --- |
| 1966 | $3,928.20 |
| 1967 | 1,885.06 |
| 1968 | 6,175.55 |

The disallowance by respondent of claimed net operating loss deductions and investment credits gave rise to the asserted deficiencies. Petitioner concedes the investment credits. Two issues remain for our decision: (1) Whether the petitioner is entitled to net operating loss deductions in excess of her adjusted basis in the stock of Jamy, Inc., a subchapter S corporation; and (2) whether Jamy, Inc., is indebted to the petitioner for the purposes of section 1374(c)(2)(B), I.R.C. 1954,[1] as a result of loans made by the Estate of Harry Prashker to Jamy, Inc.

All of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference and are adopted as our findings. The facts relevant to our decision are set forth below.

Ruth M. Prashker (herein called petitioner) was a legal resident of Kingston, Pa., when she filed her petition in this proceeding. She filed her individual Federal income tax returns on the cash basis of accounting for the years 1966, 1967, and 1968 with the district director of internal revenue at Philadelphia, Pa.

Petitioner is the widow of Harry Prashker who died on September 5, 1961, and she is the executrix and sole beneficiary of his estate.

On October 5, 1964, the petitioner and her son formed Jamy, Inc., a subchapter S corporation. They each purchased 50 shares of stock in the corporation for $5,000. These 100 shares represent the entire capitalization of the corporation. Petitioner's total stock investment in Jamy, Inc., throughout the period under consideration was $5,000. At no time has any other person or entity been a stockholder in the cor-

---

[1] All statutory references herein are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

poration. The two stockholders of the corporation timely filed the necessary election under section 1372 of the Code to be treated as a small business corporation.

From October 6, 1964, until March 2, 1966, the Estate of Harry Prashker (herein called the estate) made numerous loans to Jamy, Inc. These loans took the form of either direct payment to Jamy, Inc., the payment of a supplier to Jamy, Inc., or the purchase at a discount of an indebtedness owed by Jamy, Inc., to a factor. The primary activity of the estate was making these loans. Checks in the following amounts were issued to Jamy, Inc., on the dates indicated:

| Date | Check No. | Amount |
|------|-----------|--------|
| Oct. 6, 1964 | 109 | $75, 000 |
| Oct. 22, 1964 | 111 | 14, 392 |
| Oct. 21, 1965 | 135 | 3, 000 |
| Nov. 22, 1965 | 136 | 3, 000 |
| Nov. 29, 1965 | 138 | 50, 000 |
| Dec. 2, 1965 | 139 | 500 |
| Dec. 10, 1965 | 140 | 500 |
| Feb. 14, 1966 | 144 | 5, 000 |
| Mar. 2, 1966 | 145 | 2, 000 |
| Total | | 153, 392 |

As of November 30, 1966, the estate had made loans to Jamy, Inc., totaling $157,500. All checks were drawn by the estate, made payable to Jamy, Inc., and signed by Ruth Prashker as executrix of the Estate of Harry Prashker. All were endorsed and cashed by Jamy, Inc.

One loan of $10,608 made by the Estate of Harry Prashker to Jamy, Inc., took the form of a direct payment to a supplier of Jamy, Inc., by the name of Wilcox & Gibbs. Loans by the estate to Jamy, Inc., totaled $164,000.

The Estate of Harry Prashker acquired for $75,000 an indebtedness of Jamy, Inc., to a factor amounting to $111,771.42. Jamy, Inc., in turn gave the estate a note payable for $75,000 as evidence of its indebtedness to the estate.

The corporate balance sheet of Jamy, Inc., as of November 30, 1966, shows a loan payable and note payable to the Estate of Harry Prashker with balances of $157,500 and $75,000, respectively. The balance sheet shows no loans or notes payable to the petitioner.

The corporate balance sheet of Jamy, Inc., as of November 30, 1967, shows a loan payable and note payable to the Estate of Harry Prashker with balances of $150,500 and $75,000, respectively. The balance sheet shows no loans or notes payable to the petitioner.

The corporate balance sheet of Jamy, Inc., as of November 30, 1968, shows a "Loan Payable-Stockholders" of $182,500, which included the loan payable to the Estate of Harry Prashker of $157,500. The balance

sheet also showed a note payable to the Estate of Harry Prashker in the amount of $75,000.

During 1965 and 1966 Jamy, Inc., suffered net operating losses totaling $98,236.04. During 1967 and 1968 Jamy, Inc., reported operating profits totaling $24,241.17.

Petitioner reported the following income or took deductions as a result of the profit or loss shown by Jamy, Inc.:

| Taxable year | Income (deduction) |
| --- | --- |
| 1965 | ($47,929.93) |
| 1966 | None |
| 1967 | 2,773.61 |
| 1968 | 8,347.00 |

The Estate of Harry Prashker filed fiduciary income tax returns (Form 1041) for the years from 1961 through 1968 with the district director of internal revenue at Philadelphia.

Petitioner received the following distributions from the Estate of Harry Prashker which she reported on her Federal income tax returns as follows:

| Year | Amount | Year | Amount |
| --- | --- | --- | --- |
| 1964 | $2,000 | 1967 | None |
| 1965 | 3,000 | 1968 | None |
| 1966 | 2,000 | | |

In 1968 (the first year in which Jamy, Inc., shows a loan payable to stockholders) the petitioner filed an Application for Tentative Carryback Adjustment (Form 1045) for the years 1966 and 1967. The application claims that the net operating loss became deductible "since the taxpayer in 1968 invested money in the 1120-S corporation in excess of her proportionate share of losses." The petitioner received refunds for both years based on a net operating loss carryback in 1966 and an investment credit in 1967.

Section 1374(a) provides, as a general rule, that a net operating loss of an electing small business corporation for any taxable year shall be allowed as a deduction from the gross income of the shareholders of such corporation. There are, however, limitations to this privilege. Section 1374(c)(2)(A) and (B) provides, in pertinent part:

A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of—

(A) the adjusted basis * * * of the shareholder's stock in the electing small business corporation * * *, and

(B) the adjusted basis * * * of any indebtedness of the corporation to the shareholder * * *

Section 1376 provides for adjustments in basis of stock and debt owed to shareholders by reason of the application of the net operating loss provisions. The basis of a shareholder's stock is reduced by an amount

equal to the share of the net operating loss attributable to that shareholder. Similarly, the basis of any indebtedness owed to the shareholder by the corporation is reduced by an amount equal to that portion of the net operating loss in excess of the basis in the stock held by the shareholder.

In this case the petitioner had a basis of $5,000 in her stock in the corporation. This was completely exhausted after the corporation's first year of operation. The corporation lost $95,859.86 in that year. On her 1965 Federal income tax return the petitioner reported $47,929.93 as a deduction from gross income attributable to such loss. This clearly exceeded her basis in the stock. She is therefore entitled to a deduction only if she has loaned the corporation money and then only to the extent of her adjusted basis in such indebtedness. Cf. *Richard Lee Plowden*, 48 T.C. 666 (1967), affirmed per curiam sub nom. *Roberts* v. *Commissioner*, 398 F.2d 340 (C.A. 4, 1968).

The "benefits" of an electing corporation's net operating loss are strictly limited to the *shareholders* of the corporation. These benefits are distributed among all persons who owned the stock during the taxable year rather than inuring to the holders of the stock as of the last day of the taxable year. If the shareholders cannot utilize the net operating loss within the prescribed time, the tax benefit is lost forever. Cf. *John E. Byrne*, 45 T.C. 151 (1965), affd. 361 F.2d 939 (C.A. 7, 1966). The possibility of such loss has been recognized. The "tax benefits offered by the Code frequently turn out to be unavailable to taxpayers because of rather rigid statutory limitations Congress placed upon the right to receive those benefits." *Hauptman* v. *Director*, 309 F.2d 62, 65 (C.A. 2, 1962).

We must view this case not with an eye to what could have been done but rather what was in fact done. Hence the key question is whether or not the debt of the corporation runs "directly to the shareholder." The loan must in fact have been made by the shareholder and not merely guaranteed by him. See *William H. Perry*, 47 T.C. 159 (1966), affd. 392 F.2d 458 (C.A. 8, 1968); Rev. Rul. 69–125, 1969–1 C.B. 207. This, of course, does not rule out the possibility that a shareholder could borrow the money personally and then loan the money to the corporation. In that event the corporation's debt would run directly to the shareholder. See *Seven Sixty Ranch Co.* v. *Kennedy*, (D. Wyo. 1966, 17 A.F.T.R. 587, 66–1 U.S.T.C. par. 9293). Clearly there must be a debt running directly to the shareholder in order to permit the deduction from income of a corporate net operating loss.

It is necessary for us to trace the lineage of the loans in question to determine their tax attributes. We cannot ignore the fact that the Estate of Harry Prashker came into being on his death in December 1961, and for various reasons the estate has continued to maintain its

existence. The petitioner here is the sole beneficiary of the estate and has received distributions from it over the years. All loans were made by checks drawn on the estate's funds. All repayments were made to the estate. It was not until 1968 that Jamy, Inc.'s financial statements indicated a loan from a shareholder. Yet in 1965 the petitioner deducted from other income one-half the net operating loss of the corporation for that year. This was greatly in excess of the basis of her stock in the corporation. The only way available to petitioner to deduct Jamy's losses, absent a further contribution to equity capital, would be to loan money to the corporation.

What is important here is the identity of the lender, for it is the shareholder-lender that the statute is concerned with. Petitioner argues that the "clear language of the Code," presumably section 1374, allows the indebtedness to the estate to be added to the shareholder's basis. The statute, however, speaks of "any indebtedness of the corporation to the shareholder" and does not make provision for attribution of an estate's loan to its sole beneficiary. The provisions are plain and unambiguous. The indebtedness must run directly to the shareholder and not circuitously through an estate. We cannot ignore the distinct legal entity of the estate. A decedent and his estate are treated as separate legal entities. See *Herbert's Estate* v. *Commissioner*, 139 F.2d 756 (C.A. 3, 1943), certiorari denied 322 U.S. 752 (1944).

Contrary to petitioner's argument, the attribution rules of section 267 are not applicable to this situation. That section applies to losses from sales or exchanges of property directly or indirectly between certain related persons. Such losses are not allowed as deductions. The attribution relationships set forth in section 267(b) do not purport to attribute ownership of a debt from an estate to a beneficiary. The attribution arises only when a deduction is sought for losses involving transactions between related persons. The denial of this deduction will not support the inference that the section was meant to attribute a loan made by an estate to a beneficiary of that estate.

Petitioner has treated the estate as an independent entity in the past. The estate purchased at a discount and held an account payable to a factor; the estate has consistently filed fiduciary income tax returns and there have been distributions to petitioner from the estate. Petitioner has secured the benefits accruing to an estate under the Federal tax laws.

The estate, if a shareholder in Jamy, Inc., could have deducted any net operating losses attributable to its shareholdings not in excess of the basis of its stock and indebtedness. Unfortunately, this was not possible here because the estate was only a creditor of Jamy, Inc., and not a shareholder.

Viewing the facts as they are and the law as it is, we are led inexorably to the conclusion that the petitioner is not entitled to treat the money loaned by the estate to Jamy, Inc., as a part of her basis for the purpose of deducting net operating losses.

*Decision will be entered for the respondent.*

