MURRAY TUCHMAN AND CARYL TUCHMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tuchman v. Commissioner
Docket No. 2390-79.
United States Tax Court
T.C. Memo 1981-731; 1981 Tax Ct. Memo LEXIS 11; 43 T.C.M. (CCH) 192; T.C.M. (RIA) 81731; December 28, 1981. *11 (1) Petitioner-husband owned a subchapter S corporation which sustained substantial losses. Held: Petitioners have failed to show petitioner-husband's basis in his investment in the subchapter S corporation exceeds the amount determined by respondent; net operating loss pass-through deduction in excess of this amount is disallowed. Sec. 1374(c)(2), I.R.C. 1954. (2) Petitioner-wife did not sign the tax return for 1973; she claims she signed the tax return for 1974 under duress. Held: Both the 1973 and the 1974 tax returns were intended to be joint returns and they constitute joint returns. Sec. 6013(a), I.R.C. 1954. (3) The asserted deficiencies are attributable to disallowed net operating loss carryback deductions and disallowed itemized deductions. Held: Petitioner-wife does not qualify for relief under the innocent spouse provisions. Sec. 6013(e), I.R.C. 1954. Murray Tuchman, pro se. S. Robert Lee, for Caryl Tuchman. Christopher B. Sterner, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined deficiencies in Federal individual income, tax against petitioners for 1973 and 1974 in the amounts of $ 26,932 and $ 6,087, respectively. *12 By amendment to answer, respondent asserts in the alternative that, if the Court determines that petitioner Caryl Tuchman did not file Federal individual income tax returns for 1973 or 1974 jointly with petitioner Murray Tuchman, then the deficiency against petitioner Murray Tuchman for 1973 should be increased by $ 8,347 (for a total of $ 35,279) and for 1974 by $ 2,535 (for a total of $ 8,622). The issues for decision are as follows: [1] (1)(a) whether petitioner-husband's *13 basis in his investment in an electing small business ("subchapter S") corporation is greater than the amount of basis determined by respondent, and if it is, then (b) whether petitioner-husband's share of the subchapter S corporation's loss for 1975 exceeds the amount of loss determined by respondent; and (2)(a) whether petitioner-wife filed joint tax returns with petitioner-husband for 1973 and 1974, and if she did, then (b) whether petitioner-wife is nevertheless not liable for any deficiencies because of the "innocent spouse" provisions of section 6013(e). [2]
FINDINGS OF FACT Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference. When the petition in this case was filed, petitioners Murray Tuchman (hereinafter sometimes referred to as "Murray") and Caryl Tuchman (hereinafter sometimes referred to as "Caryl"), husband and wife, resided in New York, New York. During 1975, Murray was the president and sole shareholder of Van Rees Press, *14 an electing small business corporation (hereinafter sometimes referred to as a "subchapter S corporation") under subchapter S (secs. 1371, et seq.) of chapter 1. Van Rees Press reported its income on a calendar-year basis. At some time before 1975, the Chase Manhattan Bank (hereinafter sometimes referred to as "the Bank") made one or more loans to Van Rees Press and Van Rees Bookbinding. [3] As a result of guarantees by Murray and Van Rees Press, Murray was sued by the Bank, on account of the loan or loans, for $ 120,000. Van Rees Press filed a petition under chapter XI of the Bankruptcy Act in July 1975. In January 1976, Van Rees Press ceased operations. In or around March 1976, Van Rees Press was adjudicated a bankrupt. During 1974 and 1975 $ 36,500 was paid to the Bank in repayment of the above-noted loan or loans. Two thousand dollars of this amount was paid by Van Rees Press. An additional $ 2,000 of this amount was paid by the bankruptcy receiver of Van Rees Press. An additional $ 10,000 of this amount was paid by a *15 Marine Midland Bank "official check" dated June 21, 1974, made payable to "the Van Rees Organization, Inc. & the Chase Manhattan Bank N.A." and endorsed over to the Bank by Van Rees Organization, Inc. Murray was the sole shareholder of Van Rees Organization, Inc. The suit against Murray for $ 120,000 was settled by a consent judgment filed March 30, 1976, in which Murray agreed to (1) give the Bank his own promissory note for $ 10,000, and (2) to cause Rovi Holding Company (which Murray controlled) to pay $ 40,000 to the Bank in exchange for the Bank's interest in the obligations of Van Rees Press and Van Rees Bookbinding which had been guaranteed by Murray. During 1976, Murray paid the Bank $ 10,533.16 as a result of his personal liability as guarantor of the underlying loan. The $ 40,000 payment which was part of the 1976 settlement agreement was paid. Murray was the sole shareholder of Artistic Reproductions, Inc. Apparently, Van Rees Press and Artistic Reproductions, Inc., lent each other money from time to time. Murray's adjusted basis in the capital stock of Van Rees Press was $ 103,000 on December 31, 1975. Petitioners have been married to each other since 1950. At least *16 since 1972, they have lived together at the same address. They filed joint individual income tax returns for every year before 1972 during which they were married. Caryl did not file separate Federal individual income tax returns for 1972, 1973, 1974, or 1975. Caryl signed the 1974 and 1975 tax returns filed with respondent by Murray. Both petitioners signed the joint application for tentative refund carrying back their loss from 1975 to 1972, 1973, and 1974. This application was filed in 1976. Caryl did not sign the 1973 tax return. Caryl's signing of the 1974 tax return was not under duress. Caryl and Murray intended to file joint returns for 1973 and 1974. The deficiency determined for 1973 is attributable to the disallowance of a deduction for a net operating loss carryback from 1975. The deficiency determined for 1974 is attributable to the disallowance of deductions for (1) a net operating loss carryback from 1975, (2) medical care, and (3) maintenance of an office. OPINION I. Subchapter S Loss Deduction
Petitioners maintain that Murray's basis in his Van Rees stock and debt was $ 504,614 at the end of 1975, [4] *18 and that Van Rees Press had a 1975 net operating loss of *17 $ 746,979 for 1975. Respondent maintains that Murray's basis in his Van Rees Press stock was $ 103,000 at the end of 1975, that Murray had no basis for debt, and that Van Rees Press' loss for 1975 was $ 257,008. We agree with respondent as to Murray's basis in his Van Rees Press investment in 1975. Under section 1372(b)(1), [5] a subchapter S corporation generally is not subject to the corporate income tax; instead, under section 1373(a)[6] the corporation's income is taxed to the shareholders. Concomitantly, when a subchapter S corporation suffers a net operating loss, section 1374(a)[7] *19 provides that the loss is passed through to the shareholders. There are, however, limitations on the amount of the net operating loss deductible by a shareholder. Under section 1374(c)(2), [8] a shareholder's deductible share of the subchapter S corporation's net operating loss is not to exceed the sum of (A) the shareholder's adjusted basis in the corporation's stock and (B) the adjusted basis of any indebtedness of the corporation to the shareholder. In applying the foregoing to the facts of the instant case, it must be remembered *20 that respondent's determinations in the notice of deficiency as to matters of fact are presumed to be correct and petitioners have the burden of proving otherwise. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a). Petitioners have failed to show that, by the end of 1975, Murray paid any amount relating to his guaranty of Van Rees Press obligations. [9] *21 Petitioners have failed to show that any transaction relating to Artistic Reproductions, Inc., gave rise to a debt by Van Rees Press to Murray (see quoted material in n. 4, supra). [10] Petitioners have failed to show the existence of the $ 900 note (see n. 4, supra) or any indebtedness represented thereby. Petitioners have failed to show that any obligation which Murray may have had with regard to the taxes listed in note 4, supra, gave rise to a debt by Van Rees Press to Murray by the end of 1975. [11] In short, petitioners have wholly failed to bear their burden of proving that respondent erred in his determination that Murray had only $ 103,000 of basis available for the subchapter S pass-through net operating loss deduction. On this issue, we hold for respondent. Since respondent has allowed to petitioners the claimed deduction to the full extent of the $ 103,000 basis, it is not necessary for us to determine whether *22 Van Rees Press' 1975 net operating loss exceeded the $ 257,008 determined by respondent. II. Caryl's Liability for Taxes
A. Joint Returns Caryl asserts that she has no joint liability (a) as to 1973 because she did not sign the tax return and (b) as to 1974 because she signed the tax return under duress. Respondent maintains that (a) petitioners' testimony as to the 1973 tax return is not worthy of belief, (b) there is no evidence of duress as to the 1974 tax return, and (c) in any event petitioners intended the 1973 and 1974 tax returns to be joint returns. We agree with respondent that the 1973 and 1974 tax returns were intended by petitioners to be joint returns. Spouses may file a joint return even though one has neither gross income nor deductions, but as a consequence, liability with respect to the tax is joint and several. Subsections (a) and (d)(3) of section 6013. [12] *23 We share respondent's qualms about accepting Caryl's story that she did not sign the 1973 tax return, especially in view of the statutory presumption as to these matters. [13] Nevertheless, our comparison of the seven purported signatures of Caryl on documents in the record, together with her testimony and Murray's testimony, convinces us that it is more likely than not that Caryl did not sign the 1973 tax return. We will examine the other two questions--duress as to the 1974 tax return and intent as to both the 1973 and 1974 tax returns--together, because the same factual elements bear on both questions. We have held that a tax *24 return was not a joint return where one spouse signed the tax return under duress or fear of bodily injury. The question is whether the pressure was so great as to destroy contractual capacity. Brown v. Commissioner, 51 T.C. 116, 119 (1968). On the other hand, we have held that a tax return may be a joint return even though the signature of one spouse is missing, if both spouses intended that the return be a joint return. Estate of Campbell v. Commissioner, 56 T.C. 1, 12-14 (1971). In the instant case, we have Caryl's testimony as to her illness and as to her submissiveness as a "hausfrau", to use her term. However, there is no evidence of overbearing force, threats of physical harm, or repudiation of tax returns as soon as Caryl was free to do so. Caryl and Murray filed joint returns for more than 20 years; they continued to live together at the same address after the years here in question. Caryl signed the claim for tentative refund in 1976, which was based in part on the 1973 and 1974 tax returns being joint returns. Not even in the petition, filed February 27, 1979, did Caryl or Murray suggest that the 1973 and 1974 tax returns were not joint returns. There is no indication *25 that the 1973 and 1974 tax returns deal only with Murray's income and expenses. In fact, the 1973 tax return has attached to it a Form W-2 showing $ 1,900 of compensation income to Caryl from Hudson Standard Corp. Caryl filed no separate tax returns. The foregoing leads us to conclude--and we have found--that (1) Caryl's signing of the 1974 tax return was not under duress and (2) both the 1973 and the 1974 tax returns were intended to be joint returns. On this issue, we hold for respondent. B. Innocent Spouse Petitioners contend that Caryl should not be liable for the deficiencies determined by respondent because she is an "innocent spouse" entitled to relief from liability under section 6013(e). Respondent contends that Caryl is not entitled to relief under section 6013(e) because the deficiencies for the years in issue result from erroneous deductions claimed, not from omissions from gross income. We agree with respondent. Section 6013(e)[14] *27 expressly provides relief from liability for tax (including interest, penalties and other amounts) attributable to omissions from gross income. Inasmuch as the deficiencies in the years before us are totally attributable to deductions, *26 and not omissions, we conclude that Caryl is not entitled to relief under section 6013(e). Estate of Klein v. Commissioner, 63 T.C. 585, 595 (1975), affd. 537 F.2d 701 (CA2 1976); Resnick v. Commissioner, 63 T.C. 524, 527 (1975). See Allen v. Commissioner, 514 F.2d 908, 915 (CA5 1975), affg. in part and revg. in part on another issue 61 T.C. 125, 132 (1973); Ketchum v. Commissioner, 77 T.C.     (Dec. 7, 1981). On this issue, we hold for respondent. Since respondent has been either unchallenged (see note 1, supra) or upheld as to all the notice of deficiency adjustments for the years before the Court, and since respondent asserted additional deficiencies against Murray only in the alternative, *28 Decision will be entered for the respondent. Footnotes
1. The notice of deficiency shows adjustments for 1974 disallowing claimed deductions for medical and rental expenses. The petition puts the entire determined deficiency for 1974 in dispute; however, the petition does not assert errors with regard to these two 1974 adjustments. Respondent noted these adjustments in his opening statement (see Rule 41(b)(1)). As to these adjustments, petitioners made no reference in their opening statements, and no evidence was presented at the trial. Neither petitioner has favored us with any brief. We deem these adjustments to be conceded by petitioners. See Rules 34(b)(4) and 149(b). Unless indicated otherwise all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Unless indicated otherwise, all section and chapter references are to sections and chapters of the Internal Revenue Code of 1954 as in effect for the taxable years in issue.↩
3. The record does not indicate the relationship between Van Rees Press and Van Rees Bookbinding. Murray's testimony suggests that he owned both companies.↩
4. On their income tax return for 1975, petitioners claimed a loss deduction of $ 309,483. The Van Rees Press information return for 1975 shows $ 103,000 for capital stock and $ 206,483 for loans from shareholders as of the end of the year. No amount is shown for loans from shareholders for the beginning of the year. In their petition, petitioners break out the $ 504,614 basis they now claim, as follows: Original investment
$ 103,000
Loan by the Bank to Van Rees Press
"Loan to Artistic Reproductions by Van
Rees Press. Murray Tuchman
guaranteed it personally and took
over the obligation."
83,483
Note payable by Van Rees Press to
Murray
900
(Total set forth in petition)
$ 309,483
Liabilities of Van Rees Press for which
Murray is liable
U.S. withholding tax
$ 91,680
New Jersey State income tax
42,653
New York State income tax
27,810
New York City income tax
23,682
New Jersey disability tax
9,306
195,131
(Total set forth in petition)
$ 504,614
[Note that the correct totals of the separate item amounts set forth above are $ 307,483 and $ 502,614.]
5. SEC. 1372. ELECTION BY SMALL BUSINESS CORPORATION. (b) Effect.--If a small business corporation makes an election under subsection (a), then-- (1) with respect to the taxable years of the corporation for which such election is in effect, such corporation shall not be subject to the taxes imposed by this chapter * * * ↩
6. SEC. 1373. CORPORATION UNDISTRIBUTED TAXABLE INCOME TAXED TO SHAREHOLDERS. (a) General Rule.--The undistributed taxable income of an electing small business corporation for any taxable year shall be included in the gross income of the shareholders of such corporation in the manner and to the extent set forth in this section. ↩
7. SEC. 1374. CORPORATION NET OPERATING LOSS ALLOWED TO SHAREHOLDERS. (a) General Rule.--A net operating loss of an electing small business corporation for any taxable year shall be allowed as a deduction from gross income of the shareholders of such corporation in the manner and to the extent set forth in this section.↩
8. SEC. 1374. CORPORATION NET OPERATING LOSS ALLOWED TO SHAREHOLDERS. (c) Determination of Shareholder's Portion.-- (2) Limitation.--A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of-- (A) the adjusted basis * * * of the shareholder's stock in the electing small business corporation * * * and (B) the adjusted basis * * * of any indebtedness of the corporation to the shareholder * * *↩
9. The mere guaranty does not give the shareholder additional basis under section 1374(c)(2); the shareholder must pay the obligation before the end of the corporation's loss year. E.g., Raynor v. Commissioner, 50 T.C. 762 (1968). Also, the 1974 $ 10,000 payment which appears to have been made by Van Rees Corporation, Inc., would not increase Murray's basis in Van Rees Press even though Murray was the sole shareholder of Van Rees Organization, Inc. E.g., Frankel v. Commissioner, 61 T.C. 343 (1973), affd. without opinion 506 F.2d 1051 (CA3 1974); Prashker v. Commissioner, 59 T.C. 172↩ (1972). 10. We are at a loss to understand how a loan by Van Rees Press to Artistic Reproductions, Inc., could give rise to a debtrunning from Van Rees Press to Murray, even if Murray "guaranteed [the loan] personally and took over the obligation" and even if he paid the obligation. At most, these actions might give rise to a debt running from Artistic Reproductions, Inc., to Murray. Also, see n. 9, supra↩. 11. In addition, as to the United States withholding tax, see Medeiros v. Commissioner, 77 T.C.     (Dec. 14, 1981↩).
12. SEC. 6013. JOINT RETURNS OF INCOME TAX BY HUSBAND AND WIFE. (a) Joint Returns.--A husband and wife may make a single return jointly of income taxes under subtitle A, even though one of the spouses has neither gross income nor deductions, except as provided below: (d) Definitions.--For purposes of this section-- (3) if a joint return is made, the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several. [The subsequent amendment of this provision by section 1906(a)(1) of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1824, does not affect the instant case.]↩
13. SEC. 6064. SIGNATURE PRESUMED AUTHENTIC. The fact that an individual's name is signed to a return, statement, or other document shall be prima facie evidence for all purposes that the return, statement, or other document was actually signed by him.↩
14. SEC. 6013. JOINT RETURNS OF INCOME TAX BY HUSBAND AND WIFE. (e) Spouse Relieved of Liability in Certain Cases.-- (1) In general.--Under regulations prescribed by the Secretary or his delegate, if-- (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income. (2) Special rules.--For purposes of paragraph (1)-- (A) the determination of the spouse to whom items of gross income (other than gross income from property) are attributable shall be made without regard to community property laws, and (B) the amount omitted from gross income shall be determined in the manner provided by section 6501(e)(1)(A). [The subsequent amendment of this provision by section 1906(b)(13) [sic] (A) of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1834, does not affect the instant case.]↩