T.C. Memo. 2012-179

UNITED STATES TAX COURT

YOLANDA WELCH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

JOHN WELCH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 6742-09, 7036-09.          Filed June 28, 2012.

<u>Beverly L. Winstead</u> and <u>G. Emeka Obinna Onwezi</u>, for petitioners.

<u>Erin R. Hines</u>, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Chief Judge</u>:  These cases were consolidated for purposes of trial, briefing, and opinion.  Pursuant to separate notices of deficiency respondent determined the following deficiencies and penalties under section 6662:[1]

Yolanda Welch
<u>Docket No. 6742-09</u>

| <u>TYE Dec. 31</u> | <u>Deficiency</u> | Penalty <u>Sec. 6662</u> |
|---|---|---|
| 2005 | $2,444 | --- |
| 2006 | 25,444 | $5,088 |

John Welch
<u>Docket No. 7036-09</u>

| <u>TYE Dec. 31</u> | <u>Deficiency</u> | Penalty <u>Sec. 6662</u> |
|---|---|---|
| 2006 | $17,214 | [1]$3,442 |

[1]Following trial, with leave of the Court respondent amended his answer to assert, with respect to petitioner John Welch's 2006 tax year, an increased deficiency of $20,651 and an increased sec. 6662 penalty of $4,130.  The increases were due to respondent's reclassifying Mr. Welch's filing status from head of household to married filing separately.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary amounts have been rounded to the nearest dollar.

After a concession by Mr. Welch,[2] the issues we will decide are: (1) whether petitioner Yolanda Welch had a sufficient basis in petitioners' S corporation, Respira Medical, Inc. (Respira), to be entitled to claim passthrough losses for 2005 and 2006; (2) whether petitioner John Welch had a sufficient basis in Respira to be entitled to claim a passthrough loss for 2006; (3) whether Mr. Welch was entitled to claim head of household status on his 2006 Federal income tax return; and (4) whether petitioners are liable for accuracy-related penalties for 2006.

FINDINGS OF FACT

When they filed their petitions, petitioners resided in Maryland. They married on April 14, 2001, and resided together at all relevant times. Mr. Welch has a B.S. in business administration. Ms. Welch graduated from high school and took some college-level courses but did not complete a degree program.

In March 2001 petitioners started Respira, an S corporation that provides respiratory and home healthcare services and durable medical equipment. Ms. Welch is Respira's chief executive officer and an 80% shareholder. Mr. Welch is Respira's president and a 20% shareholder.

---

[2]Mr. Welch stipulated that for 2006 he had $3,375 of income from a State tax refund.

Ms. Welch's Alleged Loans to Respira

Ms. Welch asserts that before and during the years at issue she borrowed from Dr. Steven Levenson over $600,000 and that she lent all these funds to Respira.[3] All these funds, however, were either paid directly by Dr. Levenson to Respira or else represent amounts that he charged to his credit card as payments of Respira's expenses. Dr. Levenson wrote no checks to Ms. Welch, nor did he otherwise make any payments to her with regard to the alleged loans. Ms. Welch contributed no personal funds to Respira. Respira did not execute a loan agreement or any notes evidencing any loans from Ms. Welch.

Between October 18, 2001, and November 12, 2003, Ms. Welch signed 27 promissory notes in favor of Dr. Levenson. The notes are for varying amounts that total $598,197. The notes have various maturity dates, none more than a year after the date of execution, and generally state an interest rate of 5% per annum. The notes were secured by receivables owed to Respira; Ms. Welch did not offer any personal collateral.

From March 2003 to May 2005 Respira made some payments directly to Dr. Levenson in satisfaction of some of the promissory notes between Ms. Welch and

---

[3]Ms. Welch had a preexisting relationship with Dr. Levenson as they had worked together at a hospital and he had served as her mother's doctor.

Dr. Levenson. Ms. Welch reported no interest income or constructive dividends with respect to these payments.

On May 21, 2007, Dr. Levenson filed suit in Baltimore County Circuit Court against both Ms. Welch and Respira. He alleged that between 2000 and 2006 he had lent $656,461 to Ms. Welch and $50,000 to Respira. Dr. Levenson further alleged that as of May 2005 he had been repaid $135,400 of the amount he lent to Ms. Welch and Respira but that the payments had stopped as of May 20, 2005. By settlement agreement and release dated June 23, 2008, Ms. Welch agreed to execute a new note to Dr. Levenson for $600,000 and Respira agreed to execute a note to Dr. Levenson for $50,000.[4] The record does not indicate conclusively whether these new notes were ever actually executed or whether Ms. Welch made any payments as a result of the lawsuit.

Mr. Welch's Alleged Loans to or on Behalf of Respira

Mr. Welch claims that between 2002 and 2006 he lent Respira $121,800 by charging some of Respira's expenses on his personal credit cards; by transferring funds from his section 401(k) account; and by writing personal checks directly to Respira, to Respira's vendors and service providers, and to Ms. Welch to provide

---

[4]The record does not indicate why the aggregate amounts of these new notes exceeded the aggregate amounts of loans from Dr. Levenson that, according to his complaint, remained unpaid.

her with funds to pay Respira's bills while he was traveling. Reggie Palmore, who was Respira's chief financial officer from mid-2002 to mid-2005, recorded some payments made by Mr. Welch in Respira's books as shareholder loans.[5] Mr. Palmore did not usually ask for an invoice, bill, receipt, or other source documentation to verify the amount or nature of the expenses before he recorded the loans.

Between January 2004 and September 2006 Mr. Welch received from Respira nonpayroll payments totaling $31,099, of which $16,434 was paid in 2006.

Respira's Books

Respira's trial balance as of December 31, 2005, listed a $7,358 shareholder loan from Mr. Welch and a $60,848 shareholder loan from Ms. Welch. The 2005 trial balance listed Mr. Welch's equity contribution as $3,530 and Ms. Welch's equity contribution as $14,119.

---

[5]Mr. Welch claims that between 2002 and 2006 he charged $25,295 of Respira's expenses on his personal credit cards. He also claims that between 2001 and 2005 he wrote checks to Respira totaling $49,900. He claims that between September 2002 and January 2003 he wrote Mr. Palmore checks totaling $12,743 for accounting and financial services that Mr. Palmore performed for Respira. Mr. Welch also claims that between 2002 and 2006 he personally paid some of Respira's vendors by writing them checks on his personal checking account; these checks totaled $20,637, of which $3,100 were written in 2006.

Respira's balance sheet as of December 31, 2006, listed liabilities of $8,844 "Due to Minority Shareholder" and $66,349 "Due to Majority Shareholder".[6] The 2006 balance sheet also listed $3,530 of common stock held by the minority shareholder and $14,119 held by the majority shareholder.[7] Respira's 2006 recapitulation of payroll register showed gross payroll of $161,636 for Mr. Welch and $116,427 for Ms. Welch.

Tax Returns

On Forms 1120S, U.S. Income Tax Return for an S Corporation, Respira reported net operating losses of $50,294 for 2005 and $683,059 for 2006.[8] On their separate individual Federal income tax returns for 2005 and 2006, petitioners reported their pro rata shares of these net operating losses. More particularly, for 2005 Ms. and Mr. Welch claimed passthrough losses from Respira of $40,235 and

---

[6]Ms. Welch, as an 80% shareholder, is Respira's majority shareholder. Mr. Welch, as a 20% shareholder, is Respira's minority shareholder. Shareholder loans were reported consistently on Respira's 2006 trial balance, which listed $8,844 as "Due To Shareholder: Shareholder Loan - John" and $66,349 as "Due To Shareholder: Shareholder Loan - Maria".

[7]Stock ownership was reported consistently on Respira's 2006 trial balance, which listed Mr. Welch's "equity" contributions as $3,530 and Ms. Welch's as $14,119.

[8]For 2004 Respira reported ordinary business income of $11,387. The record does not include Respira's tax returns for years before 2004.

$15,768, respectively.[9]  For 2006, Ms. and Mr. Welch  claimed passthrough losses from Respira of $546,447 and $136,612, respectively.

On Schedule L, Balance Sheets Per Books, in its Forms 1120S for taxable years 2004 through 2006, Respira reported these beginning and ending balances for "Loans from shareholders":

| Year | Beginning balance | Ending balance |
|------|-------------------|----------------|
| 2004 | $505,844 | $409,431 |
| 2005 | 409,431 | 68,205 |
| 2006 | 68,205 | 75,193 |

For these same years, Respira reported these beginning and ending balances for "Mortgages, notes, bonds payable in 1 year or more":

| Year | Beginning balance | Ending balance |
|------|-------------------|----------------|
| 2004 | $355,288 | $490,064 |
| 2005 | 490,064 | 493,553 |
| 2006 | 493,553 | 711,373 |

For each of the taxable years 2004 through 2006, on Schedule L Respira reported "Capital stock" in the unchanging amount of $17,649.

---

[9]On her 2003 Federal income tax return Ms. Welch claimed a $1,751 nonpassive loss from Respira and also reported a $424,031 unallowed passive loss from Respira.  Ms. Welch did not file a tax return for 2004.

Ms. Welch filed her 2005 and 2006 Federal income tax returns claiming married filing separately filing status. Mr. Welch filed his 2005 and 2006 Federal income tax returns claiming head of household status.[10]

Someone named Monique Booker, whom petitioners assert is a certified public accountant but who is otherwise unidentified in the record, signed as the preparer of Respira's 2005 and 2006 Forms 1120S as well as of Ms. and Mr. Welch's individual Federal income tax returns for these years.[11]

Notice of Deficiency

By notice of deficiency respondent disallowed Ms. Welch's claimed passthrough losses for 2005 and 2006 and imposed an accuracy-related penalty for

---

[10]The parties stipulated that Mr. Welch filed a Federal income tax return for taxable year 2006 as married filing separately. That stipulation is clearly contrary to the facts that we have found are established by the record, and we shall disregard it. See Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195 (1989). The record establishes, and we have found, that Mr. Welch filed his 2006 return with head of household filing status.

[11]Mr. Palmore prepared Mr. and Ms. Welch's individual Federal income tax returns for 2002 and 2003. He also prepared Respira's Federal income tax returns for 2002 and 2003. Although Mr. Palmore testified that he "thought" he also prepared petitioners' and Respira's returns for 2004, all the 2004 returns were signed by preparer Ms. Booker, who also prepared Ms. Welch's individual Federal income tax returns for 2005 and 2006 and Mr. Welch's individual Federal income tax returns for 2005 and 2006. Ms. Booker also prepared Respira's Federal income tax returns for 2005 and 2006.

2006. By notice of deficiency respondent disallowed Mr. Welch's claimed passthrough loss for 2006 and imposed an accuracy-related penalty for 2006.

OPINION

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer has the burden of proving that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Section 7491(a)(1) provides that if, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's proper tax liability, the Commissioner shall have the burden of proof with respect to that issue. Credible evidence is evidence the Court would find sufficient upon which to base a decision on the issue in the taxpayer's favor, absent any contrary evidence. See Higbee v. Commissioner, 116 T.C. 438, 442 (2001). Section 7491(a)(1) applies, however, only if the taxpayer complies with all substantiation and recordkeeping requirements under the Code and cooperates with the Commissioner's reasonable requests for witnesses, information, documents, meetings, and interviews. Sec. 7491(a)(2)(A) and (B).

Petitioners argue that the burden should shift to respondent because petitioners "produced checks, deposit slips, bank statements, and corroborating testimony during trial" and "cooperated with Respondent at every stage of these

proceedings, including the audit." We are not persuaded, however, that petitioners complied with substantiation and recordkeeping requirements as necessary to shift the burden of proof under section 7491(a). As discussed in more detail below, although petitioners offered some documentary evidence and testimony, it is insufficient to establish their bases in Respira and thus their entitlement to losses. Moreover, petitioners did not maintain contemporaneous records of their bases in Respira, did not provide complete records to evidence alleged loans from Dr. Levenson, and did not provide complete records to substantiate business expenses Mr. Welch allegedly incurred on Respira's behalf. Accordingly, the burden of proof does not shift to respondent under section 7491(a) with respect to any factual issue relating to petitioners' bases in Respira.

## I. Petitioners' Passthrough Losses From Respira

Generally, an S corporation shareholder determines his or her tax liability by taking into account a pro rata share of the S corporation's income, losses, deductions, and credits. Sec. 1366(a)(1). The shareholder may not take into account, however, S corporation losses and deductions for any taxable year in excess of the shareholder's adjusted basis in the S corporation stock and debt. Sec.

1366(d)(1).[12]  Section 1367 provides that a shareholder's basis is increased for items of income passed through to the shareholder under section 1366(a)(1) and decreased (but not below zero) by losses and deductions passed through to the shareholder under section 1366(a)(2).

A shareholder may increase his or her basis in an S corporation if he or she makes an economic outlay to or for the benefit of the S corporation.  Goatcher v. United States, 944 F.2d 747, 751 (10th Cir. 1991); Estate of Leavitt v. Commissioner, 875 F.2d 420, 422 (4th Cir. 1989), aff'g 90 T.C. 206 (1988).  An economic outlay for this purpose is an actual contribution of cash or property by the shareholder to the S corporation or a transaction that leaves the S corporation indebted to the shareholder.  Sec. 1366(d)(1); Estate of Leavitt v. Commissioner, 875 F.2d at 423.

When a shareholder obtains a personal loan and transfers some or all of the loan proceeds to the S corporation, he or she has made an economic outlay and is entitled to increase his or her basis in the S corporation in an amount equal to the amount transferred to the S corporation.  Oren v. Commissioner, 357 F.3d 854, 858 (8th Cir. 2004), aff'g T.C. Memo. 2002-172; Prashker v. Commissioner, 59 T.C.

---

[12]Any disallowed loss or deduction may be carried forward indefinitely and claimed when and to the extent that the shareholder increases his or her basis in the S corporation.  See sec. 1366(d)(2).

172, 176 (1972); <u>Miller v. Commissioner</u>, T.C. Memo. 2006-125.  By contrast, when an S corporation shareholder is only indirectly liable for a corporate debt, that shareholder has not transferred any cash or property to the S corporation or created corporate indebtedness owed to him or her until and to the extent the shareholder actually pays the debt.  <u>Raynor v. Commissioner</u>, 50 T.C. 762, 770-771 (1968).  The key question is whether the corporation is "indebted to the shareholder for the shareholder's own money."  <u>Oren v. Commissioner</u>, 357 F.3d at 858.

In order to deduct a loss from an S corporation, a taxpayer must establish a basis in the S corporation and that it has not been reduced to zero because of losses claimed in years predating the year at issue.  <u>Hogan v. Commissioner</u>, T.C. Memo. 1999-365; <u>see</u> <u>Arnold v. Commissioner</u>, T.C. Memo. 2003-259; <u>Guerrero v. Commissioner</u>, T.C. Memo. 2001-44 ("[E]ven assuming that the checks were evidence of direct loans from petitioners, there is no evidence that the loans were outstanding on December 31, 1992, or that the amounts had not already been used in claiming 1990 or 1991 flowthrough losses."); <u>Briggs v. Commissioner</u>, T.C. Memo. 2000-380.  A taxpayer who fails to prove that he or she has a basis in an S corporation is considered to have a zero basis in that corporation.  <u>Thomson v. Commissioner</u>, T.C. Memo. 1983-279, <u>aff'd without published opinion</u>, 731 F.2d

889 (11th Cir. 1984). Thus, petitioners have the burden of proving both that they made economic outlays and that they had sufficient bases in Respira as of the close of 2005 and 2006 to absorb the claimed losses.

Petitioners claim to have made loans to Respira that gave rise to bases sufficient to support at least part of their claimed passthrough losses from Respira. Ms. Welch alleges that she made loans to Respira by contributing funds she received as personal loans from Dr. Levenson. On brief she claims that as of yearend 2005, she had $521,061 of basis in Respira--far more than enough to support the $40,235 passthrough loss that she claims for 2005. And she claims that as of yearend 2006, she had a basis of $480,826 in Respira and so should be entitled to that much of the $546,447 passthrough loss that she claimed on her 2006 return.[13]

Similarly, Mr. Welch alleges that he made loans to Respira by paying some of Respira's expenses with his personal credit card, paying vendors and service providers on behalf of Respira by personal check, writing personal checks to Respira to provide cash for the company, and writing personal checks to Ms. Welch to allow her to pay some of Respira's expenses. He also alleges that he lent Respira

---

[13]Effectively, then, Ms. Welch concedes that $65,621 of her claimed 2006 passthrough loss is suspended because of insufficient basis.

funds that he obtained by cashing out his retirement account. On brief, he asserts that as of yearend 2006 he had a basis of $80,868 in Respira and so should be entitled to that amount of the $136,612 passthrough loss that he claimed on his 2006 return.[14]

Even if we were to assume, for the sake of argument, that petitioners made loans to Respira in the amounts claimed--an assumption that respondent vigorously disputes--they have failed to show that as of the relevant dates (yearend 2005 and 2006 for Ms. Welch and yearend 2006 for Mr. Welch) they had any remaining bases in Respira. In the first instance, it is impossible to reconcile petitioners' asserted bases as of yearend 2005 and 2006 with Respira's books and tax returns.[15]

---

[14]Effectively, then, Mr. Welch concedes that $55,744 of his claimed 2006 passthrough loss is suspended because of insufficient basis.

[15]For instance, Respira's trial balance for yearend 2005, consistent with Respira's 2005 tax return, shows only a $60,848 shareholder loan from Ms. Welch and a $7,358 shareholder loan from Mr. Welch. For yearend 2006 Respira's trial balance, consistent with Respira's 2006 tax return, shows a $66,349 shareholder loan from Ms. Welch and an $8,844 shareholder loan from Mr. Welch. Although the small increases in shareholder loans from yearend 2005 to yearend 2006 might suggest additional loans that might support a small basis for 2006, Ms. Welch has not asserted any basis from loans in 2006; we deem her to have waived any such argument. Similarly, although Respira's books show that Mr. Welch's shareholder loan balance increased by $1,486 in 2006, we are unwilling to attach much significance to this consideration in the absence of corroborating evidence

(continued...)

The wide, unexplained gulf between petitioners' asserted bases and the information found in Respira's books and tax returns casts significant doubt on the reliability of petitioners' assertions. Moreover, although Respira's books and tax returns might suggest some relatively small amount of shareholder loans outstanding as of yearend 2005 and 2006, petitioners have not demonstrated whether and to what extent any bases attributable to even these relatively small amounts of outstanding shareholder loans might have been depleted pursuant to section 1367 by net operating losses that Respira might have incurred since its creation in 2001.[16] Additionally, petitioners'

---

[15](...continued)
as to any such increase, particularly considering that during 2006 Mr. Welch received $16,434 in nonpayroll payments from Respira and the evidence does not establish that he lent Respira any greater amount in 2006. Respira's books also show small equity contributions for Ms. Welch ($14,119 for yearend 2005 and 2006) and Mr. Welch ($3,530 for yearend 2005 and 2006). Petitioners have not asserted, however, that they have any bases in Respira attributable to anything other than loans. Respira's tax returns also show significant, increasing balances for yearend 2005 and 2006 for "Mortgages, notes, bonds payable in less than 1 year". But the evidence does not suggest that these short-term liabilities represent loans to petitioners; to the contrary, Respira's books suggest that these short-term obligations represent mainly, if not entirely, amounts that Respira owed to third parties for operating expenses.

[16]This concern gains added significance in the light of the fact that for 2003 Respira appears to have reported a net operating loss of over $400,000. The record does not establish whether Respira had a net operating profit or loss for years before 2003.

figures are inconsistent with other evidence, leading us to doubt the credibility of their figures.[17]  Finally, petitioners admit that during Respira's early years they did not consistently keep contemporaneous records of basis.  For these various reasons, petitioners have failed to persuade us that they had any bases in Respira as of the relevant yearend dates.  Accordingly, we sustain respondent's disallowance of petitioners' claimed passthrough losses from Respira.

## II.  Mr. Welch's Filing Status

In his amendment to answer, respondent asserted an increased deficiency and accuracy-related penalty on the ground that Mr. Welch is not entitled to head of household filing status, as Mr. Welch claimed on his 2006 income tax return.  Respondent has the burden of proof with respect to this increase in deficiency.  See Rule 142(a)(1).

To qualify as a head of household, an individual generally must be unmarried at the close of the taxable year.  Sec. 2(b)(1).  Under certain circumstances, in determining proper filing status, a married taxpayer may be treated as unmarried if he or she lives apart from his or her spouse during the last six months of the taxable

---

[17]For instance, Respira's tax returns for 2004, 2005, and 2006 report a total net repayment of shareholder loans of $430,651; however, petitioners' basis figures indicate total repayments of only $160,565 of shareholder loans from 2001 through 2006.

year, provided that certain other requirements are met. Secs. 2(c), 7703(b). Additionally, a taxpayer is not considered married if he or she is legally separated from his or her spouse pursuant to a decree of divorce or separate maintenance. Sec. 2(b)(2)(A). The determination of whether a taxpayer is married is made at the close of the taxable year. Sec. 7703(a)(1).

The parties stipulated that petitioners married on April 14, 2001, and that they were still married as of June 9, 2010. Mr. Welch testified that he and Ms. Welch resided together during 2004, 2005, and 2006. Petitioners filed separate Federal tax returns for taxable year 2006 using the same mailing address, and both petitioners received correspondence from respondent at this address. On her 2006 Federal tax return Ms. Welch indicated that she was married to John Welch. The preponderance of the evidence convinces us that Mr. and Ms. Welch were married and resided together throughout 2006. Accordingly, Mr. Welch is not entitled to head of household filing status for 2006, and we sustain respondent's assertion of an increased deficiency in this regard.

## III. Accuracy-Related Penalties

Section 6662(a) imposes a 20% penalty on any portion of an underpayment that is attributable to, among other things, negligence or disregard of rules or regulations. Sec. 6662(b)(1). Negligence is the lack of due care or failure to do

what a reasonable and ordinarily prudent person would do under the same circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Negligence includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws and also includes any failure by the taxpayers to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b), Income Tax Regs.

Under section 7491(c), respondent bears the burden of production with respect to petitioners' liability for the section 6662(a) penalties. This means that respondent "must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty." See Higbee v. Commissioner, 116 T.C. at 446. Respondent has met his burden of production with respect to the section 6662(a) penalties, as he has provided evidence of petitioners' negligence, as discussed below.

Taxpayers are responsible for keeping adequate records and substantiating items properly. Benson v. Commissioner, T.C. Memo. 2004-272; sec. 1.6662-3(b)(1), Income Tax Regs. Petitioners admitted at trial that they did not consistently keep contemporaneous records to reflect their bases in Respira. Furthermore, petitioners failed to produce records or any evidence supporting their position that

they had bases sufficient to deduct their claimed losses in Respira. Petitioners were negligent in failing to keep accurate records.

No penalty shall be imposed under section 6662(a) with respect to any portion of an underpayment if it is shown that there was reasonable cause and that the taxpayer acted in good faith. Sec. 6664(c). This determination is made on a case-by-case basis, taking into account all facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Factors considered include the extent of the taxpayer's efforts to assess his or her proper tax liability, reliance on the advice of a professional, and the taxpayer's education, sophistication, and business experience. Sec. 1.6664-4(b)(1), (c)(1), Income Tax Regs.

For a taxpayer's reliance on the advice of a professional to be reasonable, he or she must prove by a preponderance of evidence that: (1) the adviser was a competent professional who had sufficient expertise to justify reliance; (2) the taxpayer provided the adviser with necessary and accurate information; and (3) the taxpayer actually relied in good faith on the adviser's judgment. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002). "A taxpayer cannot avoid its duty to file accurate returns by shifting responsibility to its bookkeeper or its employee when the taxpayer makes an inadequate effort to see that the books and records are being kept correctly." Tietig

v. Commissioner, T.C. Memo. 2001-190, aff'd, 57 Fed. Appx. 414 (11th Cir. 2003); see also Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987).

Petitioners contend that they are not liable for the accuracy-related penalties that respondent has determined for their 2006 tax years because they acted in good faith and reasonably relied on Mr. Palmore and Ms. Booker for their basis calculations. Mr. Palmore, however, did not prepare petitioners' or Respira's 2006 tax returns; he left Respira in mid-2005 and testified that he has not been in charge of petitioners' books since then. We are not persuaded that petitioners relied upon Mr. Palmore for their basis calculations for 2006, and it is not apparent to what extent they relied upon Ms. Booker, who signed their returns. Moreover, on this record we are unable to find that Ms. Booker was a competent professional with expertise to justify reliance. Petitioners did not call Ms. Booker to testify as to her experience or the preparation of the returns. See Petzoldt v. Commissioner, 92 T.C. 661, 685-686 (1989) (drawing negative inference from failure of potential witness to testify). Nor did petitioners present any other evidence showing Ms. Booker's experience or qualifications.

Further, petitioners failed to establish that they provided all necessary and accurate information with respect to all items reported on their 2006 tax returns, such that it can be said that the incorrect returns resulted from error on their

accountant's part. See, e.g., Westbrook v. Commissioner, 68 F.3d 868, 881 (5th Cir. 1995), aff'g T.C. Memo. 1993-634; Ma-Tran Corp. v. Commissioner, 70 T.C. 158, 173 (1978); Deihl v. Commissioner, T.C. Memo. 2005-287. To the contrary, petitioners acknowledged that they did not keep contemporaneous basis records to reflect their investment in Respira, especially during the company's early years. Although we acknowledge that the determination of a taxpayer's basis in an S corporation's stock and indebtedness is a fairly complicated subject, see Hogan v. Commissioner, T.C. Memo. 1999-365, and although petitioners lack expertise in this regard, failure to keep required records weighs heavily against a finding of reasonable cause. Statutory complexity alone does not make for reasonable cause. See Edgar v. Commissioner, 56 T.C. 717, 762-763 (1971); Ellwest Stereo Theatres of Memphis, Inc. v. Commissioner, T.C. Memo. 1995-610.

Moreover, a portion of the accuracy-related penalty against Mr. Welch is attributable to his claiming head of household filing status for 2006 even though we have found that he and Ms. Welch were married and resided together throughout 2006. Mr. Welch has not expressly advanced any reasonable cause defense with respect to this issue, and we are not persuaded that he acted with reasonable cause or in good faith in this regard.

Accordingly, we sustain respondent's imposition of accuracy-related penalties against both petitioners for 2006.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>for respondent</u>.