T.C. Memo. 1997-135


UNITED STATES TAX COURT


REGINALD MAURICE WISE AND SHANNON RAE WISE, Petitioners
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

HENRY VICTOR EICHER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 12079-94, 12080-94.      Filed March 17, 1997.


Reginald Maurice Wise and Shannon Rae Wise, pro se.

Henry Victor Eicher, pro se.

<u>Michael A. Pesavento</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined deficiencies in and
additions to petitioners' 1988 Federal income tax as follows:

| Petitioners | Deficiency | Additions to Tax | |
| | | Sec. 6653(a) | Sec. 6661 |
| --- | --- | --- | --- |
| Reginald and Shannon Wise[1] | $33,380 | $1,669 | $8,345 |
| Henry Eicher[2] | 9,909 | 495 | 2,477 |

On December 14, 1995, petitioner Henry Victor Eicher (Eicher) filed a Notice of Agreement to be Bound by the decision in the Wises' case. Most, but not all, of the issues in Eicher's case are the same as the issues in the Wises' case. We accepted Eicher's agreement to be bound, but, because Eicher has the burden of proof on all issues in dispute, Rule 142(a), and because Eicher did not produce evidence, see Rule 149, we deemed Eicher to have conceded all issues in his case that are not in common with issues in the Wises' case.[3]

At all relevant times, Reginald Maurice Wise (Wise) and Eicher controlled four pass-through entities, Wesco and Hersco, which were partnerships, and Wesco Realty, Inc. (WRI) and Intent, Inc. (Intent), which were S corporations. Several of the issues

---

[1]Respondent determined that the Wises are allowed a general business credit of $2,675 on their 1988 joint tax return.

[2]Respondent allowed credits in the following amounts on Henry Eicher's 1988 tax return: (a) General business credit, $4,394; (b) credit for prior year minimum tax, $1,375; and (c) foreign tax credit, $19,515.

[3]We deem Eicher to have conceded the passive activity loss limitation issue and the addition to tax for negligence. Respondent argues that the guaranteed payment issue only relates to Eicher and is conceded. However, the guaranteed payment also affects Wise, and we do not deem it to be conceded.

for decision relate to the tax treatment of payments which were not made and income items which were not received, but which were shown in the books and records of petitioners and these various entities. The specific issues for decision are:

1. Whether Hersco may include in gross income for 1984 $189,014 of capital gain related to the sale of land to WRI, and $100,115 of interest income from WRI related to a mortgage note. We hold that it may not.

2. Whether WRI may deduct, for 1988, $100,138 of interest related to a mortgage note it gave to Hersco and $173,174 for professional services performed by Wise's sole proprietorship, Pro-Ser. We hold that it may not.

3. Whether Wise may include in gross income $231,746 for services Pro-Ser rendered to WRI. We hold that he may not.

4. Whether WRI may deduct $88,825 for services performed by Wise. We hold that it may.

5. Whether WRI's payment of $38,500 to Wise was a non-taxable repayment of a loan. We hold that it was not.

6. Whether $17,197 of expenses reported by Wise on Schedule C of his tax return should be reported on Schedule A. We hold that they should not.

7. Whether Hersco may deduct $73,122 of interest expense related to loans Eicher made to Hersco. We hold that it may not.

8.  Whether Eicher may include in gross income $73,122 of interest related to loans he made to Hersco.  We hold that he may not.

9.  Whether Wise and Eicher had enough basis in WRI on July 31, 1988, to deduct their shares of WRI's net operating loss.  We hold that they did not.

10.  Whether the Wises are liable for the addition to tax for negligence under section 6653(a).  We hold that they are.

11.  Whether the Wises are liable for the addition to tax for substantial understatement of tax under section 6661.  We hold that they are if they substantially underpaid tax for 1988.

12.  Whether Eicher is liable for the addition to tax for substantial understatement of tax under section 6661.  We hold that he is if he substantially underpaid tax for 1988.

Section references are to the Internal Revenue Code in effect for the year in issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A.  Petitioners

The Wises lived in Florida and Eicher lived in Brazil when they filed the petitions in these cases.  Eicher is a U.S. citizen, but has lived in Brazil since the early 1950's.  He worked for the Unisys Corporation until 1992.  Eicher used the address, "c/o 938 Wald Road, Orlando, Florida", on his petition.

Wise has a bachelor's degree in Business Administration from Cleveland State University. He is a licensed Certified Public Accountant (C.P.A.) in Ohio and Florida. Wise worked at Price Waterhouse for 12 or 13 years. He was an audit partner for four of those years.

Wise held a power of attorney from Eicher. At times the power was unlimited and at times the power was specific.

The Wises and Eicher were calendar-year, cash basis taxpayers.

B.   The Pass-through Entities

1.   Wesco

Wesco was a cash basis partnership formed in 1973, with a fiscal year ending April 30. Wise and Eicher used Wesco extensively as a depository or "bank" throughout most of its existence. During Wesco's fiscal years 1988 and 1989, Wise held 40 percent and Eicher held 60 percent of Wesco's income, credits, and deductions.

2.   Hersco

Hersco was a calendar-year, cash basis partnership formed in 1973. During 1987 and 1988, Hersco did not have a bank account or any recurring sources of liquid funds. During 1988, Wise held 37.5 percent and Eicher held 62.5 percent of Hersco's income, credits, and deductions.

3. <u>Intent Corporation</u>

Intent, an S corporation on the accrual basis with a fiscal year ending March 31, was formed in 1972. During fiscal years 1988 and 1989, Wise held 31.25 percent and Eicher held 68.75 percent of Intent's income, credits, and deductions.

4. <u>WRI Corporation</u>

WRI, an S corporation on the accrual basis with a fiscal year ending July 31, was formed in 1973. Wise was president of WRI at all times relevant here. WRI initially engaged in real estate brokerage activities, but was essentially inactive from 1978 to 1985. WRI owned and operated a resort near Kissimmee, Florida, during its fiscal year 1988. Wise and Eicher each were entitled to 50 percent of WRI's income, credits, and deductions during WRI's fiscal years 1988 and 1989.

C. <u>Mortgages and Loans</u>

1. <u>The Hersco Mortgage and HMC's Loan to WRI</u>

a. <u>WRI's Purchase of Land From Hersco</u>

Hersco owned 35 acres of unimproved land in Osceola County, Florida, which it bought for about $134,000 in 1973. In 1984, an independent appraiser valued the land at $1,468,000. On August 14, 1984, Hersco sold the land to WRI for $1,468,000. At the closing, WRI paid Hersco $88,000 in cash and gave Hersco a $1,380,000 mortgage on the land (the Hersco mortgage). Hersco sold the land to WRI so Wise and Eicher could develop it in corporate form and thereby limit their personal liability.

b.    Huntington Mortgage Co. Loan to WRI

On August 21, 1984, WRI obtained a $2.5 million construction loan from Huntington Mortgage Co. (HMC).  The loan was secured by a mortgage (the HMC mortgage) on the improved land.  Wise and Eicher personally guaranteed the HMC loan.  WRI made payments on the HMC loan to HMC.  WRI did not default on the HMC loan from 1984 to 1990.  The loan was renewed five times and remained payable to HMC by WRI.

c.    The Hersco Mortgage

The Hersco mortgage was subordinated to the HMC mortgage. WRI made no payments in cash or property on the Hersco mortgage from 1984 to 1990.  At all times relevant, WRI did not have enough funds to make principal and interest payments on the Hersco mortgage.  Journal entries were made in the books and records of WRI and Hersco, stating that there had been payment and simultaneous "loan backs" to WRI.  No evidence regarding the terms of "loan backs" was offered.  WRI claimed a $100,138 interest deduction relating to the Hersco mortgage for its fiscal year 1988.  Hersco never sued WRI to collect mortgage payments.

2.    The Westfield Mortgage

On December 12, 1986, Westfield Financial Corp. (Westfield) lent $1.1 million to Intent.  The loan was secured by a mortgage on land owned by Intent in Pasco County, Florida.  Wise and Eicher guaranteed the loan.  On December 16, 1986, Intent disbursed $797,344 of the Westfield loan to WRI in exchange for a

note (the WRI note) in which WRI promised to pay Intent $1.5 million or so much thereof as might be advanced and outstanding from time to time, plus interest. The WRI note states that it is secured by a mortgage on real estate; however, no mortgage was recorded in Osceola or Orange County record books.

Intent did not default on the Westfield mortgage from 1986 to 1990.

### 3. Wesco's Loans to WRI

Wesco lent some operating capital to WRI. WRI recorded its receipt of those funds by increasing its loans payable account. Wesco correspondingly increased its loans receivable account. WRI made no repayments in cash or property to Wesco during WRI's fiscal year 1988. As of July 31, 1987, WRI's books stated that it had a $980,690 loan payable to Wesco.

### D. Wise's Management and Accounting Fees

Wise, as president of WRI, was responsible for WRI's daily operations including planning, accounting, and financing. On its fiscal year 1988 tax return, WRI deducted professional management and accounting fees in the amount of $173,974 for services Wise rendered to WRI through Wise's sole proprietorship, Pro-Ser. WRI accrued expenses for management and accounting fees even though WRI generally did not pay the fees to Wise in cash or property. Wise recorded that he immediately made "loan backs" to WRI and reported the income on his tax return in the year WRI took the deduction. Yearend adjusting journal entries on the books and

records of WRI stated that these transactions had occurred.  No evidence was offered regarding the terms of these "loan backs".

E.    Wise's and Eicher's Claimed Basis in WRI

Wise and Eicher claimed additional basis in WRI of (1) $340,277 and $567,130 in 1984, respectively, as a result of WRI's purchase of land from Hersco in 1984, and (2) $1.25 million each as of July 31, 1987, as a result of their personal guarantees of the HMC loan.  In 1986, Wise and Eicher claimed increases in their basis in WRI of $229,834 and $505,635, respectively, as a result of the advances from Intent, which Intent made from the $1.1 million it received from Westfield.  As of July 31, 1987, Wise and Eicher claimed a basis in WRI of $392,276 and $588,413, respectively, relating to the Wesco loans.  As of July 31, 1987, Wise and Eicher claimed increases in their basis in WRI by $3,185 and $5,308, respectively, as a result of accrued interest on the Hersco mortgage and Wise claimed additional basis in WRI of $522,484 as a result of his "loan backs" to WRI.  As of July 31, 1987, Wise and Eicher claimed a total basis in WRI of $2,236,140 and $2,813,047, respectively.

Wise received checks from WRI totaling $88,825 during WRI's fiscal year 1988.  WRI treated the $88,825 as a loan repayment on its books and records and did not deduct that amount on its fiscal year 1988 tax return.  The Wises did not include those payments on their 1988 tax return.  Eicher received cash distributions from WRI of $19,000 during WRI's fiscal year 1988.

Also during WRI's fiscal year 1988, Wise and Eicher made cash advances to WRI of $9,909 and $32,701, respectively.

F.    WRI Losses

WRI sustained losses from its operations during 1986, 1987, 1988, and 1989.  Wise and Eicher had each claimed that they had $840,617 of cumulative losses from WRI as of July 31, 1987.  WRI reported a loss of $784,160 for its fiscal year 1988.

G.    Tax Returns

1.    Hersco's 1988 Tax Return

Hersco reported a net long-term capital gain of $189,014 on its 1988 partnership tax return.  Also on that return, Hersco reported the following amount of ordinary income:

| Item | Amount |
|------|--------|
| Other income | $100,115 |
| Less | |
| Guaranteed payment to Eicher | 73,122 |
| Taxes | 828 |
| Other deductions | 1,789 |
| Ordinary income | $24,376 |

a.    Capital Gain

Hersco reported net long-term capital gain from the 1984 sale of property from Hersco to WRI.  Yearend entries in the books and records of WRI and Hersco stated that there had been payments of principal and interest from WRI to Hersco and simultaneous "loan backs" from Hersco to WRI.  No payments were made.  No evidence was offered regarding the terms of these "loan backs".

b.    Other Income

Generally, WRI did not make any payments of cash or property on the principal or interest it owed to Hersco.  Yearend journal entries in the books of WRI and corresponding journal entries in the books and records of Hersco stated that WRI had paid principal and interest and that there were simultaneous "loan backs" from Hersco to WRI.  No evidence was offered regarding the terms of those "loan backs".

c.    Guaranteed Payment

The guaranteed payment reported on Hersco's 1988 partnership return was for accrued interest payable to Eicher on Hersco's indebtedness to him.  The amount was not paid in cash or property.  The "payment" was made only by increasing Hersco's indebtedness to Eicher.

2.    Eicher's 1988 Tax Return, Investment Income, and Expenses

Eicher claimed a deduction for investment interest expense of $76,466 on his 1988 tax return.  He also reported the following amounts of net investment income and expenses:

| Item | Amount |
|---|---|
| Interest income | $77,808 |
| Dividend income | 2,919 |
| Investment expenses | (34,452) |
| Net investment income | $46,275 |

Interest income included the $73,122 guaranteed payment from Hersco to Eicher.

3.  Wises' 1988 Tax Return

    a.  Pro-Ser's Accounting Fees

The Wises reported on their Schedule C for their 1988 tax return, gross receipts of $320,838 from Pro-Ser, Wise's sole proprietorship.  Pro-Ser provided services largely to Wesco, Hersco, WRI, Intent, and Eicher.  Pro-Ser did not offer services to the general public.  Included in Wise's gross receipts of $320,838 was $231,746, which had been billed to WRI but was never paid in cash or property.  Also included was $89,092 that originated from Wesco, Hersco, Intent, and Eicher.  Yearend journal entries were made in the books and records of WRI which showed that WRI had paid Wise.  Simultaneous journal entries in WRI's books and records stated that there had been an immediate "loan back" from Wise to WRI.  No evidence was offered regarding the terms of the "loan backs".

    b.  Pro-Ser's Expenses

The Wises claimed $56,992 of expenses relating to Pro-Ser on Schedule C of their 1988 tax return.

    c.  Investment Income and Expenses

The Wises deducted $55,885 for investment interest expense on their 1988 joint tax return.  They also reported net investment income as follows:

| Item | Amount |
|---|---|
| Interest income | $22,129 |
| Dividend income | 1,176 |
| Long-term capital gain | 70,886[4] |
| Real estate taxes | (2,135) |
| Personal property tax | (38) |
| Miscellaneous | (462) |
| Net investment income | $91,556 |

H.   The $38,500 Wise Received From WRI

During 1988, Wise received $38,500 in checks from WRI.  WRI treated the $38,500 as loan repayments to Wise.  WRI did not deduct the $38,500, and Wise did not include the $38,500 in gross income in 1988.  WRI has never deducted officers' compensation.

OPINION

Respondent's determinations regarding petitioners' 1988 tax returns primarily relate to three events:  (1) The 1984 land sale from Hersco to WRI and subsequent transactions, (2) Wise's management of WRI, and (3) WRI's pass-through losses. Petitioners dispute all of respondent's determinations. Respondent's determinations are presumed correct, and petitioners bear the burden of proof.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

A.   1984 Land Sale From Hersco to WRI and Subsequent
     Transactions

On August 14, 1984, Hersco sold unimproved land with a basis of about $134,000 to WRI for $1,468,000.  At the closing, WRI

---

[4]Wise's flow-through portion of Hersco's long-term capital gain is $70,886 (37.5 percent of $189,014).

paid $88,000 in cash and gave Hersco a $1,380,000 mortgage (the Hersco mortgage) on the land. Respondent contends that, for 1988, Hersco may not include in gross income interest from the Hersco mortgage or capital gain from the sale, and WRI may not deduct interest expense related to the Hersco mortgage because WRI generally made no principal and interest payments on the Hersco mortgage.[5] Respondent also argues that the 1984 sale was a sham. Petitioners disagree and argue that: (1) The Wise-Eicher group had enough funds to pay principal and interest, (2) Hersco constructively received the principal and interest payments, and (3) the sale was bona fide.

### 1. Hersco's Capital Gain and Interest Income

Respondent contends that Hersco may not include in gross income $189,014 of capital gain or $100,115 of interest income. The capital gain represents the amount of installment sale gain petitioners contend Hersco should report from the 1984 sale. The interest represents the income and liability accounts shown on the books of Hersco and WRI, respectively.

Petitioners contend that, because Wise and Eicher controlled four entities, including WRI and Hersco, they had the power to compel payment of principal and interest, and therefore Hersco constructively received the capital gain and interest income.

_____

[5]The $23 difference in the amount of interest Hersco included and the amount WRI deducted is due to WRI's under accrual for 1987.

Respondent argues that WRI lacked the funds to make the principal and interest payments, and therefore there was no constructive receipt by Hersco. We agree with respondent.

A cash basis taxpayer such as Hersco must include in its income amounts which it actually or constructively received. Sec. 1.451-1(a), Income Tax Regs.; see Corliss v. Bowers, 281 U.S. 376 (1930). Whether a taxpayer constructively received income is a question of fact. Avery v. Commissioner, 292 U.S. 210 (1934); Willits v. Commissioner, 50 T.C. 602, 612-613 (1968). There is no constructive receipt if the payor lacks the funds to make the payments. Estate of Noel v. Commissioner, 50 T.C. 702, 706-707 (1968); Jacobs v. Commissioner, 22 B.T.A. 1166, 1169 (1931).

In the instant case, Hersco did not receive payments of principal or interest in cash or property. The payments existed only as yearend journal entries in the books and records of WRI and Hersco. Petitioners did not show that WRI had enough funds to make the payments. WRI reported a $784,160 loss in 1988. The mere showing of a payment on the books of WRI and Hersco does not constitute receipt. See sec. 1.451-2(a), Income Tax Regs. We conclude that Hersco did not constructively receive the capital gain and interest income, and that they are not includable in Hersco's 1988 gross income. We agree with respondent on this issue.

2.   WRI's Interest Expense

Respondent contends that WRI may not deduct $100,138 of interest expense.  An accrual basis taxpayer may only deduct expenses or interest owed to a related cash basis taxpayer when the amount involved is includable in the gross income of the cash basis payee.  Sec. 267(a)(2).  WRI and Hersco are related taxpayers.  Sec. 267(b)(10); see sec. 267(e)(1).  WRI uses the accrual method of accounting; Hersco uses the cash method of accounting.  As we concluded at par. A-1, above, the interest payments on the Hersco mortgage are not includable in Hersco's gross income.  Thus, the interest expense is not deductible on WRI's fiscal year 1988 tax return.  Sec. 267(a)(2).  We agree with respondent on this issue.

3.   Bona Fide Sale

We need not decide whether the sale was bona fide.  For reasons discussed above at pars. A-1 and A-2, Hersco may not include the payments in income, and WRI cannot deduct the interest expense whether or not the sale was bona fide.

B.   Wise's Management of WRI

1.   Management Fees

Respondent contends that (a) WRI may not deduct management and accounting fees of $173,974 for services performed by Pro-Ser, and (b) Wise may not include $231,746 in gross income as payment for those services.  Based on application of the factors that we considered in deciding Hersco did not constructively

receive income (see par. A-1, above), we conclude that WRI may not deduct $173,174 for services rendered to WRI by Pro-Ser, and Wise may not include in gross income $231,746 related to those services. We agree with respondent on these issues.

2. Officers' Compensation and Reallocation of Expenses

Respondent contends that (a) WRI should deduct $88,825 for officer compensation, (b) Wise should include $38,500 as compensation, and (c) $17,197 of Wise's expenses reported on Schedule C of his 1988 tax return should be reallocated to Schedule A. Petitioners contend that the payments were loan repayments and therefore should neither be deducted by WRI nor included by Wise.

Respondent contends that the payments were officers' compensation. We disagree because WRI did not pay any officers' compensation. Petitioners contend that the payments were loan repayments. We disagree. Wise's "loan backs" to WRI lacked economic effect because the payments were neither received nor lent back. Sec. 1.451-2(a), Income Tax Regs. See par. B-1, above. Instead, we conclude that the amounts were paid to Wise for management and accounting fees performed by Wise through Pro-Ser. Thus, (a) WRI may deduct the $88,825 it paid to Wise, (b) Wise must include in gross income $38,500 of the amount he received, and (c) the Wises correctly reported expenses on Schedule C of their tax return.

C.  Guaranteed Payment

Respondent contends that (1) Hersco may not deduct a $73,122 payment to Eicher, and (2) Eicher may not include the payment in gross income.  Petitioners contend that (1) the payment was incorrectly reported as a guaranteed payment on Hersco's 1988 tax return because, in actuality, it was a payment of interest on Eicher's loans to Hersco; (2) Hersco can deduct the interest payment; and (3) Eicher constructively received the payment, and thus Eicher must include the interest payment in gross income.  Respondent agrees with petitioners that on Hersco's 1988 partnership return the payment was reported incorrectly as a guaranteed payment.  However, respondent contends that (1) Hersco may not deduct the payment because it uses the cash method of accounting, and (2) Eicher conceded that the payment is includable in his gross income.  We do not believe that Eicher conceded the issue; the treatment of the payment on Eicher's tax return relates to the treatment of the payment on Hersco's tax return.  We do, however, agree with respondent that Hersco may not deduct the payment.

1.  Hersco

Hersco is a cash basis taxpayer.  A cash basis taxpayer may not deduct an expense unless it was paid to its creditors during the tax year.  B & L Farms Co. v. United States, 238 F. Supp. 407, 415 (S.D. Fla. 1964), affd. 368 F.2d 571 (5th Cir. 1966); Oklahoma Gas & Elec. Co. v. United States, 333 F. Supp 1178, 1181

(W.D. Okla. 1971), affd. 464 F.2d 1188 (10th Cir. 1972); see sec. 1.446-1(c)(1)(I), Income Tax Regs.  A cash basis taxpayer cannot accrue an expense.  See B & L Farms Co. v. United States, supra at 415-416.  Therefore, Hersco may not deduct the expense unless it paid it.

The payment was not made in cash or property.  Journal entries nominally increased Hersco's indebtedness to Eicher, but journal entries do not establish that a payment was made.  Finoli v. Commissioner, 86 T.C. 697, 743 (1986).  The debit from interest payable to loans payable to Eicher was simply a shift from one account to another.  See Baird v. Commissioner, 25 T.C. 387, 394 (1955).

Petitioners have failed to prove that the interest payment was actually made.  Thus, we hold that Hersco may not deduct the $77,122 interest payment it reported as a guaranteed payment.

2.  Eicher

Eicher is a cash basis taxpayer.  As discussed at par. A-1, above, a cash basis taxpayer is taxable on income when it is actually or constructively received.  Sec. 1.451-1(a), Income Tax Regs.  Eicher never received the interest payment in cash or property.  The payment was made only in the sense that it was described by journal entries in the books and records of Hersco, reflecting payment and a simultaneous "loan back" of the funds. Hersco did not have enough funds to make the payment.  During 1988, Hersco did not have a bank account or any recurring sources

of liquid funds with which to make the payment.  There is no constructive receipt if the payor lacks the funds to make the payments.  See par. A-1, above.  Estate of Noel v. Commissioner, 50 T.C. at 706-707; Jacobs v. Commissioner, 22 B.T.A. at 1169. The mere recording of a payment on the books of Hersco is not receipt.  See sec. 1.451-2(a), Income Tax Regs.  There was no constructive receipt by Eicher.  Thus, the $77,122 is not includable in Eicher's 1988 gross income.  We agree with petitioners on this issue.

D.   Wise's and Eicher's Basis in WRI

Respondent contends that petitioners may not deduct pass-through losses from WRI for 1988 because Wise and Eicher each had a zero basis in WRI as of July 31, 1987, and each made net contributions to WRI of only $9,909 and $13,701, respectively. Petitioners contend that Wise and Eicher each had enough basis in WRI in 1988 to deduct their respective pass-through losses.  We agree with respondent.

The amount of pass-through losses that an S corporation shareholder can deduct is limited to the sum of the shareholder's adjusted basis in his stock and the shareholder's adjusted basis of any indebtedness of the S corporation to the shareholder. Sec. 1366(d)(1).  WRI had operating losses in 1986 and 1987.  As of July 31, 1987, Wise and Eicher each claimed $840,617 of

cumulative losses from WRI.[6]  WRI reported a loss of $784,160 for its fiscal year 1988.  Respondent determined that WRI's 1988 loss was $598,873, and that the Wises and Eicher could each carry forward $299,437 of that loss.

As of July 31, 1987, Wise and Eicher claimed a basis in WRI of $2,236,140 and $2,813,047, respectively, which they calculated as follows:

### Claimed Basis in WRI as of 7/31/87

|                                           | Eicher      | Wise        |
| ----------------------------------------- | ----------- | ----------- |
| Capital stock                             | $      750  | $      750  |
| Guarantee of the HMC loan                 | 1,250,000   | 1,250,000   |
| Loan backs of payments on the Hersco mortgage | 567,130 | 340,277     |
| 1987 interest on the Hersco mortgage      | 5,308       | 3,185       |
| 1986 Intent advances to WRI               | 505,635     | 229,834     |
| Wesco's loans to WRI as of 7/31/87        | 588,413     | 392,276     |
| Loan backs to WRI                         | 204,675     | 522,484     |
|                                           |             |             |
| Total basis before losses as of 7/31/87   | $3,121,911  | $2,738,806  |
| WRI losses claimed as of 7/31/87          | (840,617)   | (840,617)   |
| Unexplained basis                         | 531,753     | 337,951     |
|                                           |             |             |
| Total basis claimed as of 7/31/87         | $2,813,047  | $2,236,140  |

Respondent determined that the Wises and Eicher had the following basis as of July 31, 1987:

---

[6]In the notice of deficiency, respondent determined that Wise's and Eicher's share of WRI's cumulative losses was $848,424 on July 31, 1987.

|                                              | Eicher        | Wise          |
|----------------------------------------------|--------------|---------------|
| Basis claimed as of 7/31/87                  | $2,813,047    | $2,236,140    |
| Adjustments                                  |               |               |
| Guarantee of the HMC loan                    | (1,250,000)   | (1,250,000)   |
| Loan backs related to the Hersco mortgage    | (567,130)     | ( 340,277)    |
| 1987 interest on the Hersco mortgage         | (5,308)       | (3,185)       |
| 1986 Intent advances to WRI                  | (505,635)     | (229,834)     |
| Wesco's loans to WRI as of 7/31/87           | (588,413)     | (392,276)     |
| Loan backs related to management fees        |               | (522,484)     |
| Total adjustments                            | (2,916,486)   | (2,738,056)   |
| Total basis as of 7/31/87                    | $        0    | $        0    |

A shareholder taxpayer may not increase his or her adjusted basis unless the taxpayer made an economic outlay. See Underwood v. Commissioner, 535 F.2d 309 (5th Cir. 1976), affg. 63 T.C. 468 (1975) (exchange of notes relating to funds lent by a C corporation to an S corporation is insufficient to establish an economic outlay which increases the shareholder's adjusted basis); Hitchins v. Commissioner, 103 T.C. 711, 715 (1994); Perry v. Commissioner, 54 T.C. 1293, 1296 (1970), affd. 27 AFTR 2d 71-1464, 71-2 USTC par. 9502 (8th Cir. 1971) (exchange of notes between a shareholder and an S corporation is insufficient to establish an economic outlay which increases the shareholder's adjusted basis). The S corporation must be directly indebted to a shareholder for the shareholder to increase his or her basis in stock to decide the amount of the S corporation's net operating loss the shareholder may deduct; an indebtedness to a pass-

through entity which advanced the funds and is closely related to the taxpayer does not increase the shareholder's adjusted basis in stock.  Hitchins v. Commissioner, supra; Frankel v. Commissioner, 61 T.C. 343, 347-348 (1973), affd. 506 F.2d 1051 (3d Cir. 1974) (partnership); Prashker v. Commissioner, 59 T.C. 172 (1972) (estate); Burnstein v. Commissioner, T.C. Memo. 1984-74 (S corporation); Robertson v. United States, 32 AFTR 2d 73-5556, 73-2 USTC par. 9645 (D. Nev. 1973) (trust).[7]

1.  Guarantee of the HMC Loan

On August 21, 1984, WRI obtained a $2.5 million construction loan from HMC.  It was secured by a mortgage on the land WRI bought from Hersco plus any improvements made on the land.  Wise and Eicher each personally guaranteed the HMC loan.  Petitioners contend that Wise and Eicher can each increase their basis in WRI by $1.25 million as a result of their personal guarantees. Respondent contends that Wise and Eicher may not increase their basis in WRI as a result of their personal guarantees because they did not make an economic outlay.  We agree with respondent.

A shareholder's guarantee of a debt of an S corporation, without an economic outlay, does not make the corporation

_____

[7]Most of the cases interpreting "indebtedness of the S corporation to the shareholder" apply former section 1374(c)(2). That section was repealed by the Subchapter S Revision Act of 1982, Pub. L. 97-354, sec. 2, 96 Stat. 1669, 1677-1683 effective for taxable years beginning after December 31, 1982.  There are no differences between former section 1374(c)(2) and the current section 1366(d)(1)(B), that affect this analysis.

indebted to the shareholder. <u>Harris v. United States</u>, 902 F.2d 439, 441-446 (5th Cir. 1990); <u>Estate of Leavitt v. Commissioner</u>, 875 F.2d 420, 422-426 (4th Cir. 1989), affg. 90 T.C. 206, 211-218 (1988); <u>Brown v. Commissioner</u>, 706 F.2d 755, 756 (6th Cir. 1983), affg. T.C. Memo. 1981-608; <u>Underwood v. Commissioner</u>, 535 F.2d 309, 312 (5th Cir. 1976), affg. 63 T.C. 468 (1975); <u>Hitchins v. Commissioner</u>, 103 T.C. 711, 715 (1994); <u>Perry v. Commissioner</u>, 47 T.C. 159, 163-164 (1966), affd. 392 F.2d 458 (8th Cir. 1968).

Petitioners contend that this case is controlled by <u>Selfe v. United States</u>, 778 F.2d 769 (11th Cir. 1985). In <u>Selfe</u>, the U.S. Court of Appeals for the Eleventh Circuit indicated that the shareholder's guarantee of an S corporation loan could increase the shareholder's basis even though the shareholder had not satisfied any of the obligation. <u>Id.</u> at 774. The court remanded the case to the District Court for it to decide whether the loan in question was in substance a loan to the shareholder rather than to the corporation. <u>Id.</u> at 775. In <u>Selfe</u>, the taxpayer started a business and obtained a loan which was secured by her own property. The taxpayer later incorporated the business under subchapter S and converted the loan into a corporate obligation, which she guaranteed and which continued to be secured by her property. <u>Id.</u> at 770. This case is distinguishable on its facts from <u>Selfe</u> because HMC made the original loan to WRI, not to Wise or Eicher, and neither Wise nor Eicher pledged their own property as security for the loan.

Petitioners argue that we should decide this issue based on what they contend is the substance of this transaction; i.e., a loan from HMC to Wise and Eicher, which they closed through WRI, and that a $2.5 million outlay occurred which increased their stock bases.

Ordinarily, taxpayers are bound by the form of the transaction they have chosen; taxpayers may not in hindsight recast the transaction to obtain tax advantages. Don E. Williams Co. v. Commissioner, 429 U.S. 569, 579-580 (1977); Commissioner v. National Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 148-149 (1974).

The substance of this loan is not different from its form. The HMC loan to WRI did not lack substance. Petitioners never made an economic outlay justifying the basis they claimed. Apparently, HMC and WRI intended that the HMC loan be to the corporation. The loan has been renewed five times and remained in the same form, namely payable to HMC by WRI. There was no default on the loan from 1984 to 1990. WRI made repayments directly to HMC. There is no evidence that WRI was indebted to Wise and Eicher for this loan.

Wise's and Eicher's guarantees do not alter the fact that WRI is the borrower. It is not surprising that a lender to a small, closely held corporation such as WRI would seek personal guarantees from its shareholders. See Harris v. United States, supra at 445. The wholly unperformed guarantees do not meet the

requirement that an economic outlay be made before a corresponding increase in basis can occur. <u>Harris v. United States</u>, <u>supra</u>; see <u>Underwood v. Commissioner</u>, <u>supra</u> at 312. Thus, Wise and Eicher may not increase their respective bases in WRI with respect to the HMC loan. We agree with respondent on this issue.

    2.   <u>"Loan Backs"</u>

       a.   <u>Hersco Mortgage</u>

Petitioners contend that Wise's and Eicher's bases in WRI increased by their share of the "loan backs" related to the Hersco mortgage. Respondent contends that the "loan backs" may not be included in Wise's and Eicher's bases because the "loan backs" are not real debt, and the "loan backs" were between WRI and Hersco, not between WRI and Wise or Eicher. Petitioners contend that the "loan backs" are bona fide debt and that Hersco was an agent or conduit for Wise and Eicher. We agree with respondent.

As discussed at par. B-1, above, WRI did not pay the Hersco mortgage. Wise recorded the purported payments with yearend journal entries in WRI's books and records. WRI did not make an economic outlay with respect to the Hersco mortgage. The claimed "loan backs" existed only as journal entries in Hersco's books; they are not bona fide debts or economic outlays because Hersco did not receive anything it could lend to WRI. <u>Underwood v. Commissioner</u>, <u>supra</u> at 311-312.

Even if the loans were bona fide WRI debts to Hersco, Wise and Eicher may not increase their respective bases in WRI. For indebtedness to be considered as part of a shareholder's adjusted basis in S corporation stock, the indebtedness must run directly to the S corporation's shareholders; loans from an entity in which the shareholders of the S corporation have substantial or even identical ownership interests do not qualify. Hitchins v. Commissioner, 103 T.C. at 715; Frankel v. Commissioner, 61 T.C. at 347-350; Prashker v. Commissioner, 59 T.C. 172 (1972).

Petitioners rely on Burnstein v. Commissioner, T.C. Memo. 1984-74, to support their argument that Hersco was a conduit for Wise and Eicher, and that the indebtedness runs to them as shareholders of WRI. However, we rejected an argument to that effect in Burnstein v. Commissioner, supra. Thus, neither Wise nor Eicher may increase their bases in WRI as a result of Hersco's "loan backs" to WRI. We agree with respondent on this issue.

b.   Management Fees

Petitioners contend that Wise may increase his basis in WRI by $522,484 as a result of "loan backs" of the management fees WRI owed him. Respondent contends that the "loan backs" are not included in his basis because the "loan backs" are not real indebtedness. We agree with respondent.

Wise created the management fee "loan backs" in the same way that he created the Hersco mortgage payment "loan backs". See

pars. B-1, C-1, and E-2-a, above. Wise made journal entries in WRI's books and records stating that there had been payment and simultaneous "loan backs". However, in reality, WRI never parted with or received back any fees. No notes were issued for the "loan backs", the "loan backs" were not secured by any collateral, there was no repayment schedule, and no collection activity was ever attempted. Thus, for the reasons discussed at par. E-2-a, above, regarding the Hersco mortgage payment "loan backs", there was no economic outlay by Wise to WRI, and Wise cannot increase his basis as a result of his management fee "loan backs". We agree with respondent on this issue.

### 3. Intent Loan and Wesco's Loan

In December 1996, Westfield lent $1.1 million to Intent (the Westfield loan), secured by land Intent owned. Shortly thereafter, Intent lent to WRI about $797,344 of the proceeds from the Westfield loan, in exchange for a note from WRI. Wise and Eicher claimed that their bases in WRI increased by $229,834 and $505,635, respectively, as a result of Intent's loan to WRI. They also claimed that their bases in WRI increased by $392,276 and $588,413, respectively, as a result of loans Wesco made to WRI. Respondent contends that neither Wise nor Eicher may increase his basis in WRI as a result of either Intent's or Wesco's loans to WRI because none of those loans was a debt of the S corporation that ran to Wise or Eicher as required by section 1366(d)(1)(B). Petitioners disagree and argue that both

Intent and Wesco were acting as agents for Wise and Eicher with respect to the Westfield, Intent, and Wesco loans, and therefore the funds lent to WRI came directly from Wise and Eicher. We agree with respondent.

For the reasons discussed at par. E-1, above, relating to the HMC loan, we will not recharacterize the form of these transactions. From 1986 to 1990, there was no default on the Westfield loan, the loan repayments were made directly from WRI to Westfield, and neither Wise nor Eicher had to make any payments on the Westfield note. In addition, WRI made no repayments on its loans from Intent or Wesco.

Intent, like WRI, was an S corporation, and Wesco, like Hersco, was a partnership. As discussed at par. E-2-a, above, relating to the Hersco loan, borrowing from an entity in which the shareholders of an S corporation have substantial or even identical ownership interests does not qualify as indebtedness which runs directly to the S corporation's shareholders. Hitchins v. Commissioner, supra at 715; Frankel v. Commissioner, supra at 347-350; Prashker v. Commissioner, supra at 172. Thus, Wise and Eicher may not increase their respective bases in WRI as a result of either Intent's loan of a majority of the proceeds from the Westfield loan or Wesco's loans. We agree with respondent on this issue.

E.  Additions to Tax

1.  Negligence[8]

Negligence is a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.  Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Neely v. Commissioner, 85 T.C. 934, 947 (1985).  Respondent contends that the Wises were negligent in reporting the items of income, losses, and expenses, that they claimed on their 1988 tax return.  To avoid liability for negligence, the Wises must show that they acted reasonably and prudently and exercised due care in reporting the above items on their 1988 tax return in light of their experience and business sophistication.  Avellini v. Commissioner, T.C. Memo. 1995-489; Lucas v. Commissioner, T.C. Memo. 1995-341; Poplar v. Commissioner, T.C. Memo. 1995-337; see Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 740 (1973).

Most of the adjustments that respondent made to the Wises' 1988 tax return relate to the timing of reporting income and expenses.  Those income items and expenses relate to journal entries that were meant to increase the Wises' and Eicher's debt basis in WRI so that petitioners could claim pass-through losses

---

[8]We deem Eicher to have conceded the negligence additions to tax.  See note 4, above.

from WRI.  Wise, a sophisticated taxpayer, made or supervised making those journal entries and preparing the tax returns for all the entities and parties involved in this case.  We held that the Wises and Eicher may not increase their respective bases in WRI because, among other reasons, they did not follow the rules and regulations concerning the proper timing of including income and deducting expenses.  Wise was negligent in not following those rules.  We conclude that the Wises are liable for the additions to tax for negligence under section 6653(a).

2.  Substantial Understatement

Section 6661(a) imposes an addition to tax of 25 percent of the amount of any underpayment attributable to a substantial understatement of tax.  Pallottini v. Commissioner, 90 T.C. 498 (1988).  An understatement is the amount by which the correct tax exceeds the tax reported on the return.  Sec. 6661(b)(2)(A).  An understatement is substantial if it exceeds the greater of 10 percent of the correct tax or $5,000.  Sec. 6661(b)(1)(A).

If a taxpayer has substantial authority for the tax treatment of any item on the return, the understatement is reduced by the amount attributable to it.  Sec. 6661(b)(2)(B)(i).  Similarly, the amount of the understatement is reduced for any item adequately disclosed either on the tax return or in a statement attached to the return.  Sec. 6661(b)(2)(B)(ii).

Respondent has authority to waive this addition to tax, if the taxpayer shows there was reasonable cause for the understatement and the taxpayer acted in good faith.  Sec. 6661(c).

Petitioners bear the burden of proving that imposition of the addition to tax under section 6661 is erroneous.  Rule 142(a); Tweeddale v. Commissioner, 92 T.C. 501, 506 (1989).

### a.    The Wises

The Wises substantially understated their income tax for 1988.  Although distinguishable on its facts, Selfe v. United States, 778 F.2d 769 (11th Cir. 1985), is substantial authority for petitioners' claim to increase their bases because Wise and Eicher guaranteed the HMC loan.  However, they have not shown that they (1) had other substantial authority for the other positions taken on their tax return, (2) adequately disclosed their position on the tax return or in a statement attached to the tax return, (3) had reasonable cause for the understatement, or (4) acted in good faith.  The Wises have failed to carry their burden of proof.  We agree with respondent on this issue except for petitioners' increased basis for the HMC loan.

### b.    Eicher

Eicher may reduce the amount of the understatement because of his reliance on Selfe v. United States, supra.  To the extent Eicher has otherwise substantially understated his income tax for

1988, we hold that he is liable for the addition to tax under section 6661.

To reflect the foregoing,

<u>Decisions will be</u>

<u>entered under Rule 155.</u>